IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ROBERT BARTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 09-6046-SJ-NKL-NKL ) |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Plaintiff Robert Barton ("Plaintiff") challenges the Social Security Commissioner's ("Commissioner") denial of his claim of disability and disability insurance benefits. This lawsuit involves an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 433 ("Act"), and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 - 1383b.

On July 24, 2008, following an administrative hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. The decision of the ALJ stands as the final decision of the Commissioner. Plaintiff seeks judicial review, petitioning for reversal of the ALJ's decision and an award of benefits or remand for a new hearing. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Because the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole, the Court denies Plaintiff's Petition.

## I. Factual Background[1]

Plaintiff alleged disability due to heart problems (including three heart attacks, four stents, and angina), diabetes, back problems, elbow and hand difficulties, and depression, with an amended onset date of May 25, 2004. Plaintiff was born in April 1962 and has a high school education. In the past, he worked in jobs such as a machine operator, security officer, and nurse's aid.

### A. Plaintiffs' Testimony

Plaintiff testified at his June 25, 2008 hearing. At that time, he was five feet, eleven inches, and weighed 175 pounds. He lived with his wife, ten-year-old daughter, and his wife's two-, four-, and sixteen-year-old children. Plaintiff last worked in 2002, when he was laid off from running an ejection molding machine because business was slow, and was unable to find other work in the small-town area where he lived. He testified to caring for himself, preparing simple meals, going grocery shopping with assistance, and driving. He said he cares for the children, assuring that they eat, take medications, shower, and help with laundry and chores. Plaintiff said that he goes fishing near his home; he becomes winded on the short walk, and sits on the bank of the water when fishing. Plaintiff said he likes to garden, which he can do about twenty minutes per day, and indicated that he mows the lawn with a riding mower.

---

[1] Portions of the parties' briefs are adopted without quotation designated.

Plaintiff spoke of his medical limitations, including prior heart attacks. He said he suffers from shortness of breath on exertion; he said he takes nitroglycerin for chest pain, which occurs three to five times per month with stress or exertion, and that the medication requires him to lie down. Plaintiff testified that he was smoking a pack and a half of cigarettes per day, though he had tried to quit without success. He testified that his insulin gives him diarrhea daily. Plaintiff said he could probably stand or walk for fifteen to twenty minutes at a time, and be on his feet two to three hours out of an eight hour work day. He said he has short-term memory issues – such as with grocery lists.

### B.     Medical Records

Plaintiff has had significant cardiac problems. From 2001 to 2003, Plaintiff was hospitalized three times with heart attacks. Plaintiff also had angioplasty and stenting. Plaintiff continued to complain of chronic cough, shortness of breath, and chest pains throughout his relevant medical history, and used nitroglycerine to help with those pains. Plaintiff saw cardiologist James Caesar, M.D., beginning with his first heart attack in March 2001. Records from several visits to Dr. Caesar in 2006, 2007, and 2008 indicate that Plaintiff was normally active, and that his exam results were within normal limits. The record indicates that Plaintiff continued to see Dr. Caesar regularly at least until shortly before the administrative hearing.

The record indicates that Plaintiff has had issues with depression. In April 2004, Plaintiff reported to Linda Youngren, M.D., that medications for his depression were not helping and were making him drowsy. At a follow-up appointment in May 2004, Dr.

Youngren noted that he stated he was doing "ok" with his depression, and that he presented with a depressed affect. In July 2005, nurse practitioner Eloise Unger, F.N.P. (supervised by Nancy Hayes, M.D.), noted that Plaintiff's antidepressants were not doing enough to help his anxiety and stress, and diagnosed him with continued anxiety. In August 2005, Plaintiff told Unger that he was normally sleeping three to four hours per night, which was usual for him but apparently reinforced by caring for an infant grandchild. In December 2006, Plaintiff presented with depression at an orthopedic consultation. The records indicate that Plaintiff sought treatment from Unger for sleeping difficulty throughout the relevant time period. The records also indicate that Plaintiff took various antidepressants during the relevant time period. There is no record that Plaintiff underwent specific psychological treatment or was referred for such treatment. Unger acted as Plaintiff's primary care provider from 2005 into at least 2008.

The record shows that Plaintiff has had other physical issues during the relevant time period. He had been diagnosed with diabetes and had some difficulty controlling his blood sugar. Unger and Hayes prescribed medication and provided counseling for his diabetes. He had back pain, with MRI test results showing some multilevel degenerative disc disease, mild spinal stenosis, and mild disc bulges. He had tennis elbow and surgery to address it. He had complained of foot and leg pain, as well as weakness in his arm and hand; he was treated by a pain specialist, who recommended physical therapy and the use of a TENS unit. In 2008, Unger diagnosed him with chronic obstructive pulmonary disease.

    **C.    Medical Opinions**

Dr. Caesar provided several documents giving his opinion about Plaintiffs' work abilities. In October 2006, he completed a letter summarizing Plaintiff's limitations. Dr. Caesar stated that Plaintiff was on maximum medical management but still had significant limitations. Dr. Caesar opined that Plaintiff could: lift five pounds occasionally, and ten pounds rarely; walk continuously for thirty minutes; be out of a chair less than two hours during a normal work day; not be exposed to extremes of weather or required to climb or balance; and not be required to stoop or crouch for significant periods of time.

In March 2008, Dr. Caesar completed a Medical Source Statement - Physical on Plaintiff – a check box form. There, Dr. Caesar opined that Plaintiff could: frequently carry twenty-five pounds; occasionally carry twenty-five pounds; stand or walk continuously for one hour; stand or walk for three hours over an eight-hour work day; sit continuously for three hours; and sit for six hours during an eight-hour work day. Dr. Caesar further stated that Plaintiff could never climb, balance, or crawl, and could occasionally stoop, kneel or crouch; also, Dr. Caesar said Plaintiff needed to avoid moderate exposure to weather, wetness/humidity, dust, fumes and vibrations.

In June 2008, Dr. Caesar wrote a letter to Plaintiff's attorney, giving a "narrative report" on Plaintiff's limitations. Dr. Caesar's letter follows the limitations set forth in his October 2006 letter.

In May 2008, Nurse Unger also completed a Medical Source Statement - Physical for Plaintiff. She opined that he could: frequently carry ten pounds; occasionally lift twenty pounds; stand or walk continuously for fifteen minutes; stand or walk for one hour in an

5

eight-hour work day; sit continuously for thirty minutes; sit for two hours in an eight-hour work day; not be required to do more than limited pushing or pulling.  She opined that Plaintiff could not kneel, and otherwise listed environmental and positional limitations similar to those of Dr. Caesar.  She also opined that Plaintiff would need to lie down to alleviate pain during work days with unknown frequency and duration.

At the same time, Nurse Unger completed a Medical Source Statement - Mental for Plaintiff.  She opined that he would be moderately limited in the following areas: ability to remember locations and procedures; understand and remember and carry out detailed instructions; maintain attention and concentration; perform within a schedule and maintain regular attendance; sustain routine without supervision; complete a normal workweek without interruption from psychological symptoms; get along with peers; and respond appropriately to changes in the work setting.  Nurse Unger opined that Plaintiff would be markedly limited (defined as more than moderate but less than extreme) in the ability to interact appropriately with the general public and accept instructions and criticism from supervisors.  Nurse Unger opined that Plaintiffs' medications would cause a decrease in concentration, persistence or pace.

State agency consulting physicians reviewed Plaintiff's records in connection with the disability determination process. In January 2007, one of those consulting physicians opined that Plaintiff did not have a severe mental impairment, and that he had no restrictions in activities of daily living, no difficulties with social functioning, mild difficulties with

concentration, persistence or pace, and no episodes of decompensation. No consulting physician examined him and offered an opinion as to his abilities as part of that process.

**D.     ALJ's Decision**

In his written decision, the ALJ set forth the requisite five-step process for making disability determinations. *See* 20 C.F.R. §§ 404.1520, 416.920; *Fastner v. Barnhart*, 324 F.3d 981, 983-84 (8th Cir. 2003). Applying that process, he found the following severe impairments: arteriosclerotic heart disease, history of right tennis elbow release surgery, degenerative disc disease of the lumbar spine, diabetes, diarrhea from the use of insulin, recurrent calluses on both feet, and bronchitis. The ALJ did not find Plaintiff's depression to be a severe impairment.

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to lift and carry ten pounds occasionally and less than ten pounds frequently, stand or walk at least two hours in an eight-hour workday but only thirty minutes at a time followed by a five minute rest, after which he could resume standing or walking for an additional period of time, and sit six hours in an eight-hour workday but only thirty minutes at a time while being free to reposition himself to relieve discomfort. The ALJ further found that Plaintiff could: occasionally climb stairs or ramps, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel and crouch, but never crawl; occasionally reach and work overhead with his dominant right arm; frequently handle and finger with his right hand; needed to avoid concentrated exposure to cold and heat, vibration, fumes, odors, dusts, gases, and poor

7

ventilation; never work around hazardous machinery or unprotected heights; and have ready access to a restroom.

In other words, the ALJ used the most conservative restrictions set out in Dr. Caesar's letters and his Medical Source Statement with limited exception: the ALJ disagreed with Dr. Caesar's letter regarding whether Plaintiff could do any climbing, balancing, or being around extreme weather. Where Dr. Caesar's letter said that Plaintiff could never climb or balance and should have no exposure to extreme weather, the ALJ found – consistent with Dr. Caesar's Medical Source Statement – that Plaintiff could occasionally climb or balance and should avoid concentrated exposure to cold and heat.

In making this finding, the ALJ discussed Plaintiff's testimony and medical records. The ALJ noted Dr. Caesar's records stating that Plaintiff was normally active, with exam results within normal limits. The ALJ recited the limitations set forth in the Medical Source Statements and Dr. Caesar's letters, noting the inconsistencies. The ALJ noted the MRI results but said there was no evidence of motor strength deficit or the need to use an assistive device for ambulation. The ALJ noted Plaintiff's daily life activities. The ALJ concluded that Dr. Caesar's assessment that Plaintiff could be out of a chair less than two hours per day and that Plaintiff could not balance were not supported by the objective medical evidence; the ALJ stated that he did not "give any weight to these limitations."

The ALJ discussed but rejected Nurse Unger's Medical Source Statement opinions that Plaintiff was able to: stand or walk only fifteen minutes at a time for a total of one hour per work day, sit less than thirty minutes at a time; and sit only two hours per work day with

8

a need to lie down to alleviate symptoms during the work day. The ALJ said that these limitations, along with certain postural limitations, were not supported by the findings from the objective medical evidence. The ALJ commented that the opinions were inconsistent with the opinion of Dr. Caesar, which did not say that Plaintiff would need to lie down; the ALJ gave more weight to Dr. Caesar's opinion because he is a physician and his findings were more consistent with the objective medical evidence. Finally, the ALJ noted that Plaintiff had testified that he could be on his feet for two to three hours per day, provided he could get up and down when needed.

The ALJ gave no weight to Nurse Unger's Medical Source Statement – Mental, dismissing it as inconsistent with the medical evidence of record. The ALJ noted that, other than a few notations on depression and Plaintiff taking antidepressants, the record does not contain other evidence of mental health issues such as subjective mental complaints, abnormal psychiatric signs, cognitive impairment, or additional treatment. The ALJ commented that Dr. Caesar did not indicate issues with mental health or medications. The ALJ said he gave "greater weight" to Dr. Caesar's assessment than to Nurse Unger's because her assessments were not consistent with treatment records and were not supported with psychological testing. The ALJ also cited to the opinions of the state agency consulting physicians.

The ALJ noted Plaintiff's daily life activities. These included caring for an adult child, two teenagers, and a grandson, assuring that they eat, take medications, shower, and help with laundry and chores. The ALJ also commented that Plaintiff testified to shopping,

9

preparing meals, caring for the yard, and caring for himself. The ALJ found these activities inconsistent with an individual debilitated to the point claimed by Plaintiff.

The ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy, such as surveillance monitor, callout operator, or weight tester.[2] Consequently, the ALJ found that Plaintiff was not disabled.

**II.    Discussion**

Plaintiff argues that the ALJ erred (1) in not finding Plaintiff's depression to be a "severe" impairment and (2) in "dismissing" the opinions of the treating sources and, thus, failing to give them proper weight. The Court must determine whether there was substantial evidence in the record to support the ALJ's finding that Plaintiff does not have a disability entitling him to benefits. *Dixon v. Barnhart*, 324 F.3d 997, 1000 (8th Cir.2003). "Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision." *Id.* (citations omitted). In reviewing the ALJ's decision, the Court may not decide facts anew, reweigh the evidence or substitute its judgment for that of the ALJ. *See Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). The Court must defer "heavily" to the findings and conclusions of the ALJ. *See Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691

---

[2] At the hearing, a vocational expert testified that an individual with limitations as listed in the ALJ's RFC could find work available in the national and local economies, even if that individual could only lift five pounds frequently. The vocational expert testified that an individual with limitations as described by Ms. Unger could not.

(8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (citation omitted).

  A. **Plaintiff's Depression as a Severe Impairment**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not find Plaintiff's depression to be a "severe" impairment at Step Two of the sequential evaluation process. A severe impairment is an impairment or combination of impairments which significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), and 416.921(a). Basic work activities encompass the abilities and aptitudes necessary to perform most jobs; included are functions such as: understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work situation. *See* 20 C.F.R. §§ 404.1521(b) and 416.921(b).

It is a claimant's burden to establish severity. *Caviness v. Massanari*, 250 F.3d 603, 604-05 (8th Cir. 2001). The United States Court of Appeals for the Eighth Circuit has clarified that "[s]everity is not an onerous requirement for the claimant to meet," but it also is not a "toothless standard," and claimants must make some showing of more than minimal interference with basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (citation omitted).

In this case, there is little, if any, objective evidence of depression interfering with Plaintiff's activities. As the ALJ noted, Plaintiff did not seek treatment other than through antidepressants, the use of which does not alone establish depression as a severe impairment. *See id.* at 707 (holding that depression was not severe where a claimant's mental health problems "did not significantly limit his ability to think, understand, communicate, concentrate, get along with other people, and handle normal work stress"); *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992) (holding that anxiety was not severe where the claimant did not seek counseling, psychiatric treatment, or hospitalizations despite the fact that claimant had a twenty-eight-year history of taking anti-anxiety agents). In four years of records submitted from Nurse Unger, only twice did she indicate a diagnosis of depression; both of those mentioned were in the Spring of 2004. Nurse Unger did not refer Plaintiff for further treatment. *See generally Gwathney v. Chater*, 104 .3d 1043 , 1045 (8th Cir. 1997) (indicating that failure to seek treatment for alleged mental impairments contradicted subjective complaints); *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (affirming an ALJ's finding that mental issues were not severe where the claimant sought very limited treatment, and such treatment was related to obtaining benefits). There is very limited reference to depression in other records, which appear to be based on Plaintiff's reports of his medical history. There is no evidence that Plaintiff's depression interfered with his ability to perform work or life tasks. Plaintiff himself did not testify to being limited by symptoms attributed to depression. The records of Dr. Caesar, who treated Plaintiff for several years, do not indicate depression that would qualify as being severe. While a lack

of objective evidence is not dispositive, it is a factor which ALJs may consider in determining the degree of alleged limitations. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Kisling v. Chater*, 105 F.3d 1255, 1257-58 (8th Cir. 1997) (considering the effect of depression which had been found severe).

In addition to the lack of objective evidence, a consulting physician opined that Plaintiff's depression did not rise to the level of severity. The ALJ could properly look to that opinion as one factor in considering whether the record established a severe mental impairment. 20 C.F.R. §§ 404.1527(f), 416.927(f). *See also Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004) ("It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment.") (citation omitted).

Plaintiff argues that the ALJ erred by dismissing the Medical Source Statement - Mental opinion of Nurse Unger. As opposed to an "acceptable medical source," whose opinion may be entitled to controlling weight, a nurse practitioner is considered an "other" medical source under the Act whose opinion is not accorded controlling weight. *See* Social Security Ruling ("SSR") 06-3p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). Nevertheless "Opinions from [other] medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id. See also* 20 C.F.R. § 416.913(d) (information from medical sources other than licensed physicians, including information from treating nurses, may be used to show the severity of an impairment). ALJs "generally should explain the weight given to opinions

13

from these or 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*

Here, the ALJ adequately explained his rejection of Nurse Unger's opinion. Her treatment records do not support an opinion that Plaintiff was severely impaired by depression, nor do the records of other treaters. Plaintiff did not receive treatment for depression other than medication. By all reports – including his own – he functioned at a "normal" level of activity.

Plaintiff argues that the ALJ should have ordered a consultative examination with regard to Plaintiff's mental health. However, there is no indication that the ALJ felt unable to make the assessment he did based on the evidence in the record; as such, he was not required to order an additional examination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (finding that the ALJ did not err by failing to order additional assessments where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence[]"). Also, as to Nurse Unger's opinion, where an ALJ discounts an opinion because it is inconsistent with other evidence, the ALJ is not required to seek additional clarification. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). The ALJ's finding that Plaintiff's depression is not severe is supported by substantial evidence.

### B. Plaintiff's Treating Source Opinions

In addition to taking issue with the ALJ's severity findings, Plaintiff also generally argues that the ALJ failed to give appropriate weight to his treating medical source's opinions in determining his RFC. Plaintiff bears the burden of establishing that his RFC is such that he is not able to return to any past relevant work. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001).

In arguing RFC, Plaintiff points to the opinion of Dr. Caesar, who had a long treating relationship with Plaintiff as his cardiologist. Generally, treating physicians' opinions are entitled to controlling weight. 20 C.F.R. § 416.927(d)(2). Again, the ALJ's RFC finding is, in fact, consistent with the opinions expressed by Dr. Caesar. While the ALJ did not place complete credence in every detail of each of Dr. Caesar's three opinions, the ALJ relied on those opinions heavily in determining RFC. As to certain limitations, the ALJ chose the less conservative restriction in Dr. Caesar's Medical Source Statement, rather than the more conservative restriction stated in Dr. Caesar's letter. Specifically, where Dr. Caesar's letter said that Plaintiff could never climb or balance and should have no exposure to extreme weather, the ALJ found – consistent with Dr. Caesar's Medical Source Statement – that Plaintiff could occasionally climb or balance and should avoid concentrated exposure to cold and heat.

In addition to Dr. Caesar's own statements, other evidence supports the ALJ's selection of Dr. Caesar's less conservative restrictions. Dr. Caesar's records repeatedly note that Plaintiff's activity level was normal. Plaintiff's testimony did not indicate that he had no ability to climb, balance, or be exposed to extreme weather: the ALJ could reasonably

15

consider Plaintiff's ability to drive, shop, care for children and himself, garden, and sit on the banks of a fishing pond to be inconsistent with Dr. Caesar's more conservative limitations. Plaintiff had not been prescribed an assistive walking device. And Plaintiff does not point to evidence contradicting the ALJ's findings. Though there were certain contradictions in Dr. Caesar's opinion, which the ALJ acknowledged, there was no need for the ALJ to recontact Dr. Caesar if the ALJ could otherwise determine from the record whether Plaintiff was disabled; the ALJ's citation to the record as a whole indicates that recontacting Dr. Caesar was not necessary here. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir.2006).

Turning to Nurse Unger, Plaintiff's other treating source, the ALJ properly addressed her opinions. As discussed above, the ALJ appropriately considered her Medical Source Statement - Mental. As to the limitations set out in her Medical Source Statement - Physical, Plaintiff points to no place in the record where Nurse Unger's extreme limitations on that checkbox form are supported by any other evidence about Plaintiff's ability to work. Again, other evidence supported a finding consistent with the ALJ's RFC determination – most notably, the opinion of Dr. Caesar, Plaintiff's long-time treating physician. Nurse Unger's opinion was not entitled to controlling weight given its inconsistency with that, and other, evidence.

The ALJ assessed Plaintiff's RFC only after considering all of the evidence of record, including Plaintiff's medical records and testimony. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and

16

others, and an individual's own description of his limitations") (citation and internal punctuation omitted). Some medical evidence must support the ALJs' RFC findings. *Guilliams v. Barnhart*, 393 F.3d 798 (8th Cir. 2005). Here, the RFC was based on the medical evidence and opinion from Dr. Caesar, as well as Plaintiff's representations about his life activities and the record as a whole. The ALJ's RFC finding is supported by substantial evidence.

## III. Conclusion

Accordingly, it is hereby ORDERED that Plaintiff's Petition [Doc. # 3] is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 13, 2010
Jefferson City, Missouri